Good morning ladies and gentlemen. The first case this morning is Arrigo v. Link Stop, Inc. Good morning, Your Honor. Jim Castor for the appellant. May it please the court. I'll be addressing three errors at the trial court level today that I believe each justify reversal and remand. First, the plaintiff's discrimination claims to her FMLA lawsuit. Second, the dismissal of the second lawsuit where she brought those discrimination claims. And third, evidentiary errors that occurred at the trial that were significant and deprived the plaintiff of a fair trial. First, on the Rule 15 motion to amend, this was a motion brought by the plaintiff on April 1st of 2013. It was more than a year to the trial. There were 10 months of additional discovery to be done. The court denied the motion on the basis that the plaintiff had waited six months to bring the motion after the filing of the complaint. The delay is explained in the record, is fully explainable, but irrespective of that, this case is controlled by Dupes v. Commonwealth. The decision from this month delay, which was completely unexplained, was not enough to justify the denial of a motion to amend. I recognize that this is an abuse of discretion standard, but given the fact that there was no prejudice and the plaintiff's delay was fully explained, under the Dupes' case, this denial of the motion to amend was error. Would a stay of the Rego 1 help? There are, would it have helped? I don't know, Your Honor. Here's what we have. The cases that talk about a stay are the Herman case and the Cholarski case. Those cases are distinguishable for one fundamental reason. Those cases went to judgment on an underlying non-discrimination claim, and the plaintiff then later complained that they couldn't wrestle their discrimination claims away from the administrative agencies in time to bring them. In this case, we don't have a stay. And the court says, when the plaintiff complains, well, you should have brought a stay of the underlying action. In this case, we're a year away from trial in the underlying action. It never dawned on me that we should bring a motion for a stay. We asked the defendants for a tolling agreement. They rejected that idea. The same thing is accomplished by the tolling agreement. And in any case, we haven't proceeded to judgment on the underlying action. We're a year away from judgment on the underlying action. The Skylarski case controls the dismissal of the second lawsuit, and frankly, the court in the memorandum on the denial of the motion to amend forewarned that bringing the second action, which we said we would have to do if the court denied the motion to amend, would be barred by res judicata. The Skylarski decision from this court in January of this year ends that question. In Skylarski, this court ruled that an interim motion, the denial of an interim motion to amend, is not a final judgment for the purpose of res judicata. But you could have brought though that motion earlier, right? Your motion to amend, that could have been filed earlier. Your Honor, we actually brought the motion to amend. The record will reflect that we brought the motion to amend three days before we got the right to sue letter from the EEOC. We asked them to stipulate to the amendment earlier, and we were waiting for, and this is reflected in the record in the affidavit of Bonnie Smith, that we were waiting, for some reason the EEOC was delayed and understaffed at the time, didn't give us a right to sue, promised us a right to sue on March 28th. We immediately brought the motion to amend, even before we had it in hand. We got it. You can't bring the discrimination claims without the right to sue. It's just an administrative requirement. So, but in any case, there is, they have not identified one scintilla of additional discovery that would have been necessary, and the motion for summary judgment was six weeks off. In any case, we had just amended the scheduling order. There was 10 months of additional discovery. It was a year to trial. There's no discernible basis for denying the motion to amend, and then the dismissal of the second action is clearly not barred by res judicata. We took these steps all the while in this case, Your Honor, we were trying to bring the claims efficiently, fairly, and together. That's what we were trying to do. We requested a tolling agreement in September of 2012. They denied that. When we found out in the administrative agency in January of 2013 that we couldn't get complete relief in the administrative agency because, for some quirky reason, they didn't have enough employees for the WFMLA, but had enough employees for the FMLA, we requested dismissal of the administrative proceeding and tried to bring all the claims together in federal court. We asked the defendant to agree to an amended complaint on February 28th of 2013, and we moved to amend the complaint on April 1st, just as we were promised the right to sue, which we got two days or three days later. All this while, we're trying to be efficient with the court's time and bring these claims fairly and together. Then at the trial, the court excluded large swaths of evidence, in part on the basis that she said at one point on the record, that our critical evidence would have been great evidence if we had the discrimination claims, but was not relevant, not relevant to the FMLA claim, and that was her ruling. It's ironic that as we went through the trial, where the court seemed to be suggesting we should be headed is proving the defendant's intent. We had the best evidence of his intent you could possibly have. We had handwritten notes that he took before he allowed the plaintiff to come back to the workplace, which the court then excluded, completely excluded, as irrelevant under Rule 402. These notes show that the plaintiff was that he delayed reinstatement so that he could analyze her, so that he could sound mind, because after all, it was his money and his company, and this is what he said about the notes in his deposition. He did not care what a doctor said. It didn't matter to him what a doctor said, and then he will testify at trial under oath that he was waiting for a doctor's certification of return to work. This was directly contrary to his under oath testimony in his deposition. We were not allowed to use that evidence, because the trial court not only ruled that the October 8th notes were irrelevant, she ruled that they did not exist. A ruling which I have never seen before, that notes of a meeting held by the defendant that shows his discriminatory intent do not exist for the purpose of this record. In delaying reinstatement without written notice, Mr. Link directly contradicted 29 CFR 835-305, which is an FMLA regulation which says that the defendant cannot delay reinstatement without written notice to the plaintiff. In doing his own examination of fitness, he contradicted 29 CFR 825-310, which says under the FMLA an employer cannot do their own examination of fitness of the individual taking FMLA. The employer can't second guess the reason for the FMLA leave, which is exactly what was happening here. The notes also have a section on the notes called ideas for change. Ideas for change are immediately upon her return, taking her away from management and having her work on financial statements. These changes in her duties are directly contrary to the FMLA. The court's reasoning that these notes weren't related to the FMLA claim, but would have been great evidence in the discrimination claim, is just wrong as a matter of law. The court also, in making these rulings at trial, the court denies the plaintiff the right to prove a discrimination claim in the only two ways a plaintiff can. By direct evidence of his handwritten notes and his thinking at the time, or circumstantial evidence proving that the reasons that he offered were pretextual, were false. Now we don't have a case where we have one reason or two reasons for discharge. We have eight years of reasons here. Eight years, including not showing up for work, being insubordinate, not paying bills on time. Let me take that example, not paying bills on time. The evidence at trial would have shown, had we been allowed to put in this evidence, that at different points in time there was no money in the account. We were not allowed to put in evidence that there was no money in the account because Mr. Link was not copied on the email. So this extension of the link-to-link foundational requirement that was asked for by the court got to that level. We were not, Mr. Link complained that the plaintiff was late for work every day. We were not allowed to show, by independent witness testimony, that the plaintiff showed up for work every day at nine, but not at that place of employment because Mr. Link wasn't there at the time. So what we got at trial was the exclusion of this key indirect evidence. Lydia Cook's email showing that the doctor had in fact cleared the plaintiff to return to work, so they knew that she had been cleared to return to a trial that he did not have a doctor's certification was false. Lydia Cook's permission to the plaintiff to go on vacation, which Mr. Link described as the last straw. He said her going on vacation was the last straw and was the final justification for termination. Ms. Cook gave his assistant, as she routinely did, gave the plaintiff permission to go on that vacation. That was not permitted as evidence at trial. That she didn't pay bills on time when there was no money in the account. That she arrived every day at work at 9 a.m., was excluded because she went to a different place and not to Mr. Link's residence. That she made repeated efforts to do the inventory that was... Wasn't there a change of her work location? I mean... Yes. The reason why she was showing up for work at about 11 o'clock in the morning is she had several businesses that she was running. And so she would go to the other business and then go to Mr. Link's house. So she showed up at Mr. Link's house at about 11 o'clock in the morning. He changed her duties and changed her so that he could keep an eye on her. That's what he said in his deposition. At trial he had a different story. He testified at trial that the reason why he moved her to his house was so that he could help her succeed. She made repeated efforts to do an inventory that, in fact, she was criticized for not doing. And we were not allowed to cross-examine Tammy Gregory with the possibility that she had gotten every bit of help that she wanted. So that, in the two ways a plaintiff can prove her case, by direct evidence and by indirect evidence, Ms. Arrigo was denied that right at trial. I'm going to reserve the balance of my time for rebuttal. That's all I have. Thank you. Mr. Kaplan. Dan Kaplan and Krista Sterk of Foley & Lardner, on behalf of the defendants at police, Linkstop Inc. and J Link, may it please the court. There are, as Mr. Kastor points out, three primary issues to be tried by you or decided by you today. Two of those issues are an abuse of discretion standard, and one is review de novo. The two that are abuse of discretion standard relate to the motion to amend, as well as to the evidentiary decisions made during the trial itself. This court reviews the decision to dismiss Arrigo 2 on a de novo basis. I will first address Ms. Arrigo's attempt to bring her motion to amend and Judge Crabb's decision on that motion to amend, which Mr. Kastor suggests was an abuse of discretion. And can you go to why there would be prejudice to the defendant in not allowing that motion? Absolutely, Your Honor. The court, specifically Judge Crabb, identified a number of reasons in her decision that related to prejudice itself. Specifically, at the time that the decision was made, the discovery disposition had already been fully completed. In addition, all of the depositions, or principally all of the depositions that were to be taken in the case, had been taken. So the discovery was just cleanup discovery that was left because discovery hadn't closed, had it? That's correct. And the only reason that discovery had not closed at that point was because of a change in the scheduling order very shortly before the decision on the motion to amend was already pending for a number of months, six months in fact, before they even brought the motion to amend. And I believe it was close, by the time that the decision on the motion to amend was rendered, the case had been pending for over a year. The decision to not bring the motion to amend earlier was a tactical litigation decision that was made by the plaintiff, Ms. Arrigo, in this case. It wasn't an attempt to try and get all of her claims before the court in one forum. In fact, Ms. Arrigo filed all claims, including the discrimination claims she sought to attach to the FMLA case, with the State Equal Rights Division nearly two years prior, in January of 2011. Had she wanted to bring these claims with the federal FMLA claim before the district court, she could have easily sought a right to sue letter any point after 180 days has expired from January, I think she filed her ERD claim in February of 2011, to any point prior to September of 2013 when she commenced the FMLA case. But she did not. In fact, the thing that is most telling about this being a case that apparently backfired on Ms. Arrigo is the party's Rule 26F pretrial scheduling report. The parties jointly filed, as required by the federal rules of civil procedure, a 26F pretrial report that can be found in the record at R-16. In R-16, in that report, the parties specifically identified the pending discrimination claims, both disability and pregnancy, before the state agency and noted them. Notwithstanding the fact that they noted those pending claims before the state agency, Ms. Arrigo specifically stated, and I quote when they submitted the report, stated, the parties do not anticipate amendment amending the pleadings. She had made a strategic litigation decision. She wanted to pursue her claims in the state agency, and that's fine. She's entitled to do that. And if she wants to amend the complaint to add these claims, then the court had set an order that they had proposed, that the parties had proposed together, by when any amendments should be placed. And that order, the Rule 26F pretrial report specifically stated, December 11th would be our amendment day. That was a date that both parties proposed for amendments, and then that date was adapted by the court's order at R-18, which is in the record as well, the court's scheduling order, which specifically said December 11th as the date for amendment of the pleadings. The amendment of the pleading in this case did not take place until April, or wasn't even sought until April of 2012. I'm curious, what additional discovery would you have pursued, had that amendment been granted? Because, as I understand her deposition testimony, there was lots of cross-examination on, and not cross-examination, but lots of examination on her condition, and her medical condition, and that all came out. So what more would have been done? Sure, there is, as the court knows, the FMLA claim deals with leave, and the interference with leave, and retaliation for taking leave, and the ADA claim dealt with disability, and particularly disability as it related to a mental health condition, which was anxiety. The pregnancy claim deals with, obviously, pregnancy. There were depositions that would need to have been retaken, particularly of third-party witnesses that weren't in our control, particularly as it related to what other sorts of disability leaves, or disability accommodations had been made by the defendants in other occasions. Because, as this court knows, one way that a plaintiff proves a discrimination claim is to show substantially similar people being treated dissimilarly. Well, we would have had to discover, and explore, and develop all of our evidence that relates to the fact that they were treated similarly. Unfortunately, a number of these employees were not our employees any further, so we would have had to elicit testimony from them about their treatment, and things of that nature. Similarly, we would have had to have discovery that was related to pregnancy leave, and pregnancy treatment, and how those employees who, again, no longer within our control, needed to be deposed again, or addressed again. So there was those depositions that would have also have been necessary. In addition, there was discovery on damages. The damages recoverable under the FMLA are limited to back pay, and then liquidated damages pursuant to the same statute that applies to the Fair Labor Standards Act. Whereas, the damages recoverable on a pregnancy discrimination claim, Title VII, as well as the Americans with Disabilities Act claim, relate to emotional distress and punitives. At no point had anybody engaged in the discovery necessary, nor did anybody have any experts at this point relative to emotional distress, or any claims of emotional distress. The court specifically found that those issues, the additional prejudice to the defendants, were issues that would justify denying the motion, and she engaged in an analysis that she is entitled to do. And this court has said on a number of occasions, in fact, in the cases that Ms. Arrigo principally cites for her appeal on this issue, this court has said that we will look to the district court, because it's sitting in a much better position to evaluate what prejudice may befall the parties involved in the litigation. But the court also identified the waste of judicial resources that were going to be expended if she allowed amendment at that point. And she talked about the fact that there was another set of summary judgment briefing, et cetera, that would have had to have occurred on the new claims. This all assumes that only Rule 15 applies here. But in fact, as I've pointed out already, Rule 16 applies here as well. And it was Rule 16 that both the court and the parties also discussed, while not identifying it by number, but by utilizing the language justification. Because there is already a court order here, a scheduling order, that this court has said should be provided with the treatment that all court orders should receive. For example, we have summary judgment local court orders, and this court has routinely stated that failure to comply with that court order may allow for an admission to be taken based on a failure to respond to, for example, a proposed finding of fact. This is no different. We have a court order in place. That court order specifically stated, file amendments by December 11th. And the plaintiff in this matter did not do that, did not even seek to attempt to do that. And as this court pointed out in Czarnecki and its other cases, Herman among others, there is multiple ways that a plaintiff can take care of preserving his or her rights on varying claims that may be subject to exhaustion requirements against those that are not subject. Was there any mention with regard to that scheduling order when they sought to amend? I'm sorry? When they sought to amend, was a reference back to the standing order? There were comments by, in the briefing, and from the district court as to justification, but I do not recall specifically as I stand here today, whether anybody specifically identified the Rule 26F scheduling order. As such, because Rule 16 applies to this question, although Ms. Arrigo has asserted that the defendants have waived arguing Rule 16, I would suggest that that's in fact not so. That's not so for a couple of reasons. First, both the parties and the court address justification in its underlying analysis, which is essentially the same thing as is there good cause to have delayed in bringing this motion. Secondly, this court has shown, specifically this court stated in the Dubix v. Commonwealth Etterson case, the case upon which Ms. Arrigo relies most heavily, that this court will affirm a denial of a motion to amend on any grounds supported by the record. It need not be raised by the defendant or argued in the district court beforehand. In fact, this court looked at an issue that wasn't even addressed by the district court in that case, specifically where it came out with that decision. This was, as I mentioned, a litigation strategy. They could have done a number of things at the point in time when they sought to add, if they had wanted to, the pregnancy and ADA claims. And in fact, at the time when the motion was denied, they could have sought interlocutory review, and they did not. These are all choices that the plaintiff, Ms. Arrigo, made in her litigation of this case. I've already... Can you now talk about that claim splitting and the fact that I don't think there was a final judgment in the first case when the court issued its denial, right? In the first, in the Arrigo first, Arrigo one, there was not a... And are you speaking with respect to the motion to dismiss? The motion to dismiss. Okay, with respect to Arrigo two, there was not, at the point in time when the motion to dismiss was brought, any final judgment in Arrigo one. That trial had not yet occurred. In fact, that case was dismissed, I think it was February, March, was when it was brought in April. It was that case which rendered, I think, sometime in November on the motion to dismiss, if I recall correctly, and then the appeal was shortly thereafter and the trial wasn't scheduled to occur until May, and did not occur until May. The plaintiff, Ms. Arrigo, has essentially set up a straw man argument and has rested on the straw man argument in her appeal. She's argued race judicata does not apply because there was no final judgment in place on Arrigo one at the time that she filed Arrigo two. However, the court's decision on the motion to amend wasn't based upon race judicata grounds at all. The court noted that irrespective of the lack of a judgment, I am exercising what the court has the inherent authority to do in order to manage her docket with respect to giving effect to her orders. And under rule one, a court has the ability to manage its docket. And Judge Krabb said, listen, whether I grant the dismissal now or we wait until this trial is over in a few months and I have to grant it then, it's irrespective. It's a waste of judicial resources. This is what I addressed in the motion to amend. You've not come forward with any justification whatsoever for waiting and delaying in this court and prejudicing the parties by so doing this. And it was amazing that the flip in position that the plaintiffs took with respect to whether or not it was a waste of judicial resources and efficiency. In one hand, they argued that they should have been tried together because of judicial efficiency. And then immediately upon Arrigo two, they're arguing it's judicially efficient to argue them separately. Obviously, circumstance had a lot to do with the basis of the argument. But the court specifically held that it was not based on race judicata, but based on inefficiencies in proceeding with two lawsuits. And what did the plaintiff, Ms. Arrigo, do when that decision was rendered? She didn't seek any emergency relief from this court. And she could have. That's allowed under the rules before this court. And she didn't even seek to push the briefing on Arrigo two to have it resolved at some point more quickly. In fact, the parties submitted that the briefing should be delayed until after the trial on Arrigo one. And that's what occurred. Now that Arrigo one has been completed, there is but no question that race judicata applies. We have a final judgment on the same core facts involved in all of the claims with the same exact parties. And so now this case is essentially, or the appeal as to the dismissal, is essentially moot because race judicata does clearly apply. With respect to the trial itself, Ms. Arrigo is here to seek a new trial. To get there requires a two-step analysis. First, she must prove that an error occurred, or errors, and she must convince this court that the error or errors were not harmless. This court has said, with respect to evidentiary rulings made during a trial, that in order to prove that it is not harmless, it must be a significant chance existing that they affected the outcome of the trial. Ms. Arrigo complains of two categories, essentially, of evidence excluded by the district court. Evidence going to her objective performance, which she admits was not communicated to Mr. Link, and then certain evidence related to her medical condition. I state certain evidence because Ms. Arrigo was actually allowed to present a lot of medical evidence during the trial itself. She was able to present evidence as noted at pages 21 and 22 of our brief, and as noted in the record at 255, 201 to 255. Can you get to the notes, because they seem to suggest that the real reason she was fired was because she took FMLA leave, and in the notes, Link even titled the notes a review, a leave of absence medical review. Was the first review like that he'd ever put in her personnel file? Sure, absolutely, Your Honor. The medical review notes, or the October 8 meeting notes, Exhibit 13, the court ruled that those notes were not relevant. Ms. Arrigo was correct in her briefing that the court did not engage in a Rule 403 balancing analysis, and that's because the court had held that it wasn't relevant in the first instance. The only word and the only time the word leave appears is at the very top when it says medical review leave. I mean, it is what it is because she was coming back. There's no evidence in the notes, and we attached the notes to our briefing as part of the appellate appendix because the plaintiff, Ms. Arrigo, had not. Has no reference of inherent animus to leave. If you look at the notes, it's simply a recitation of the facts that Ms. Arrigo provided to Mr. Link. That is, here's my anxiety, I have issues with this, that, and the other thing. There's nothing in there that talks about leave, nothing that foresees potential for future leave whatsoever, and the court went through a very careful analysis to determine whether or not it was relevant, and ironically, and I think very importantly, it was never presented with the argument that there was animus intimated by virtue of the notes. Ms. Arrigo never argued before the district court that these notes illustrate animus to leave. Rather, Ms. Arrigo argued to the court that these notes were relevant because it shows that a particular condition suffered by Ms. Arrigo was not liked by Mr. Link, and I quote now, directly from the arguments relative to Exhibit 13 at trial, where Mr. Kasser is talking about the notes, quote, I think these notes and this meeting demonstrate that precisely what we've been arguing about is true, that he had a bias against this particular condition, this particular serious medical condition. Not that he had a bias against leave, that he had a bias against an anxiety disorder. Going on, I think for that reason his concern about whether or not the anxiety issue was troubling to him. A little bit later in that same argument, it was a turning point, in part because he was very much biased against this particular serious medical condition, and he concludes with, this shows and demonstrates a bias by Mr. Link against this particular serious medical condition. We're not trying whether there was a bias against a particular serious medical condition. We were trying whether or not there was a bias against people taking leave, and the discharge in this case, what Mr. or what Ms. Arrigo wanted to argue was an ADA case, but the court had not let in the ADA case, and so all of this evidence relative to the Exhibit 13 notes were not relevant, and he never raised the inherent animus to use of leave before, and he should not be countenance to argue it now for the first time on appeal when the court never had that briefly, but this court has routinely stated in any number of cases, I'm sorry I'm done your honor, if I might finish my thought. Go ahead. This court has said routinely on a number of occasions that we will not look to the objective whether or not it was right, whether or not she was performing or not performing. Rather, you must look to whether or not the decision-maker in the case honestly believed in the decision and its basis, and whether or not had a good faith honest belief. The DeVry case that we pointed out to the court that was decided just two weeks ago summarizes this rule of law, and it's a rule of law that's not vague or unfamiliar to anybody who practices in this circuit as you've identified that rule of law on a number of occasions. I thank you for your time. Thank you. How much time? Six minutes. Thank you, your honor. On the two first issues, we have a door A or door B analysis. Either on the motion to amend we have a discretion standard for sure, on the dismissal of the second lawsuit we have a de novo standard. And the notion that the trial court did not dismiss these discrimination claims on the basis of race judicata is fanciful. This argument about rule one is a brand new argument. They have never made that before, that the court somehow has the inherent authority to dismiss lawsuits on the basis of rule one of the rules of civil procedure. So let me ask you this, even if we agreed with you that res judicata didn't mean dismissal since there wasn't a final judgment, what would happen now in light of the fact that there is a judgment after trial in the first case? Well that would, the notion they've made this argument that we now have a final judgment. That kind of in time by years would completely eviscerate the notion of race judicata. But the bottom line is if we did send it back, then there it would be res judicata. The district court could then make that finding, a rule in that way, right? If you sent it, I'm sorry your honor. Yes, if we sent it back, said the court error in dismissing the case. Now the first case has been resolved. So now we have a res judicata. That would eliminate all appellate review of errors by transposing things in time, your honor. And what we know, what we know, practical standpoint, right? What we know though is that the errors that occurred in the actual trial may not have occurred. I mean her elimination of the October 8th notes, she says, and we quoted this on the record, this would have been great evidence had you had the discrimination claims. But you don't and I'm not allowing it. And then also the notion that I didn't argue that this related to leave. We made several arguments, positions on the record. I made offers of proof regarding the October 8th notes. I said from the beginning of the case, before trial, this was the central evidence in the case. This was the centerpiece of the plaintiff's case. Without it, we could not explain what happened at all. They said also we were discover leave evidence. They offered a plethora of leave evidence at trial. They offered discrimination evidence. We had to show that this leave was different. These notes clearly showed that. And by doing his own analysis of the leave himself, he was violating the CFRs that surround the FMLA. What I'm saying here, your honor, is that there would be a new, there should be a new trial on the way astray at trial because the court was excluding evidence that related to claims that she said she dismissed. While not allowing evidence that, clearly we have overlapping concentric circles. The evidence was related and relevant to both. So if I understand it, you're saying if it went back on two, there would be different evidence that the judge admitted would possibly come in in two that didn't come in in one. Well, sure, your honor. And I think for the same reason. But this central evidence was also relevant to the FMLA claim. And her disregard of that evidence is, entitles the plaintiff to a new trial on the FMLA claim. So we think that that FMLA claim clearly entitles, as I said before, the plaintiff was, this isn't where we're complaining about a random evidentiary ruling. We were disallowed from offering direct evidence and indirect evidence. Unless we could show that Mr. Link was in the room at the time of a poor performance, we could not offer that evidence. We could not offer evidence that there was no money in the account when she was accused of not paying bills. We could not offer evidence that she showed up for work on time. The truth of the matter does contradict a person's statement. They rely on honest belief cases. Well, when we have a single instance where somebody is reported to have done something wrong and the employer believes that, and maybe it turns out to be an error, well maybe we have an honest belief argument. We don't have that here. We have eight years of performance issues. Everything from insubordination to being late to not performing duties on time to not doing inventory and key duties. The truth of the matter, the actual truth of what happened, contradicts the so-called honest belief. What they want to do is take the word honest out of the standard and make it something like bury your head in the sand belief. That's what they are trying to do because you can't possibly apply that doctrine to these facts. She's entitled to a new trial on the FMLA claim. The denial of the motion to amend was an abuse of discretion and by the way, the Rule 16 arguments were completely waived. That is an argument they make for the very first time standing here and that cannot be done. And the scheduling order had just been amended to push trial off for a year. The dismissal of the second lawsuit, which we had to bring because we had a right to sue letter, we had no choice but to bring it, or it would be even though she warned us in her order on the motion to amend that she would look at that as a raised judicata, we had to bring it. We brought it. Her dismissal of the second lawsuit was an error of law. That's all I have. Thank you. Thank you, counsel. Our thanks to both counsel and the case will be taken under advice.